IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELLE C. SMITH, on behalf
of herself and all others similarly
situated,

      Plaintiff,

v.

R.F. FISHER ELECTRIC
COMPANY, LLC,

      Defendant.

Case No. 17-2457-DDC-KGG

## MEMORANDUM AND ORDER

Plaintiff Michelle C. Smith, on behalf of herself and others similarly situated, filed this lawsuit against defendant R.F. Fisher Electric Company, LLC. She alleges that defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the Kansas Wage Payment Act ("KWPA"), Kan. Stat. Ann. § 44-313 *et seq.* Doc. 1. The parties have agreed on a class-wide settlement.[1] They now ask the court to grant preliminary approval of their collective action settlement. Doc. 18. For reasons explained below, the court declines the parties' request.

## I.     Background

Plaintiff alleges that defendant required one administrative employee, each day, to work over lunch without pay to answer phones and clean the kitchen and break area—responsibilities commonly referred to as "kitchen duty." Plaintiff alleges this "kitchen duty" required about 40

---

[1] Plaintiff also alleges, on behalf of herself only, that defendant violated the FLSA by terminating her employment as retaliation for engaging in protected activity. The parties' settlement does not include this claim. Instead, the parties stipulated to the dismissal of this FLSA retaliation claim on May 30, 2018. *See* Doc. 42.

minutes of work per day and defendant followed this practice for about two years—some 510 business days.

Plaintiff assumes an average hourly rate of pay of $20.40 for the administrative employees. Using this assumption, she calculates defendant's liability in this fashion: 510 business days x 2/3 of an hour (40 minutes per day) x $20.40 x 1.5 overtime rate = $10,404. When liquidated, plaintiff contends, this unpaid overtime calculation amounts to a potential judgment of $20,808.

Conversely, defendant asserts that it paid any employee working kitchen duty for that time so long as she recorded the time on her timesheet. But, on December 20, 2016, its administrative employees received an email. Defendant reports that some of the employees misunderstood this email to direct them to stop recording time that they spent conducting kitchen duty. Thereafter, plaintiff reported to her supervisor that employees were not recording their time properly, and thus not being paid properly. Defendant then informed administrative employees to record all kitchen duty time on their timesheets to ensure that they were paid for it. Based on these events, defendant asserts, any unpaid kitchen duty occurred between December 20, 2016 and January 19, 2017—a period of 20 business days. Defendant's theory of the case results in, at most, 13 hours and 20 minutes of unpaid kitchen duty (20 days x 40 minutes).

Defendant assumes: (a) the unpaid kitchen duty was evenly divided among the five administrative employees employed during the relevant timeframe (*i.e.*, each worked 2.7 hours of unpaid kitchen duty); and (b) defendant should have paid all unpaid kitchen duty at the time-and-a-half overtime rate. Based on these assumptions, defendant contends that its maximum liability is $839.34. Defendant explains its theory of maximum exposure this way:

| Employee | Regular Rate/ OT Rate | Amount Owed (OT Rate x 2.7 hours) | Liquidated (Amount Owed x2) |
|---|---|---|---|
| Tammy Nodurft | $24.62/$36.93 | $99.71 | |
| Eva Steeples (Miller) | $23.50/$35.25 | $95.18 | |
| Lisa Herzog | $18.00/$27.00 | $72.90 | |
| Dena Kelley | $20.50/$30.75 | $83.03 | |
| Michelle Smith | $17.00/$25.50 | $68.85 | |
| Totals | | $419.67 | $839.34 |

The parties have reached an agreement that settles their dispute over defendant's potential liability. Under the agreement, defendant will pay up to $10,000. The Settlement Agreement defines the settlement class as all non-exempt administrative employees who performed "kitchen duty" during the two years before plaintiff filed her Complaint with the court. This settlement class includes a total of 10 individuals. The agreement proposes to distribute the settlement proceeds as follows: nothing to plaintiff's counsel—he has waived his fee; $1,000 to plaintiff as a service payment; and the remaining $9,000 to be apportioned among the settlement class members *pro rata* based upon the number of days each worked within the two-year period. The following table represents the proposed *pro rata* distribution.

| Name | Work Started | Work Ended | Days Worked | Payment |
|---|---|---|---|---|
| Faith Base | 04/20/15 | 12/21/16 | 611 | $1,258.35 |
| Tammy Nodurft | 04/20/15 | 04/20/17 | 731 | $1,505.49 |
| Nancy Snowdy | 04/06/17 | 04/20/17 | 14 | $28.83 |
| Eva Steeples (Miller) | 04/20/15 | 04/20/17 | 731 | $1,505.49 |
| Lisa Herzog | 07/28/16 | 04/20/17 | 266 | $547.83 |
| Dena Kelley | 04/20/15 | 04/04/17 | 715 | $1,472.54 |
| Michelle Smith | 12/21/15 | 03/03/17 | 438 | $902.06 |
| Beth Winkler | 06/06/16 | 07/21/16 | 45 | $92.68 |
| Diane Bayer | 04/20/15 | 06/10/16 | 417 | $858.81 |
| Pam Krueger | 04/20/15 | 05/26/16 | 402 | $827.92 |
| Totals | | | 4370 | $9,000.00 |

Under the Settlement Agreement, each class member will receive notice of this lawsuit and the proposed settlement by mail and also will receive information disclosing the specific amount the respective class member would receive. Each class member will have 60 days from

3

the Notice's mailing to consent to join the collective action and settlement. The Notice and Consent Form will be mailed to class members within five days of the court's preliminary approval of the parties' settlement. Class members who return the Consent Form will receive their *pro rata* share of the settlement proceeds, as already described. Any class members who do not return the Consent From will receive nothing, but they will remain free to bring a wage and hour claim against defendant.

The parties seek the court's preliminary approval of their collective action settlement.

## II.   Legal Standard

The parties to an FLSA action must present a settlement of those claims to the court for review, and the court must determine whether the settlement is fair and reasonable. *Barbosa v. Nat'l Beef Packing Co., LLC.*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Also, when parties settle FLSA claims before the court has made a final certification ruling, the court must make some final class certification finding before it can approve an FLSA collective action settlement. *Barbosa*, 2015 WL 4920292, at *3 (citing *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011)).

## III.   Analysis

In the following three sections, the court discusses final collective action certification, the fairness and reasonableness of the proposed settlement agreement, and the fairness and reasonableness of the proposed service payment to plaintiff. Ultimately, the court cannot

determine whether the proposed service payment is fair and reasonable so the court cannot preliminarily approve the parties' collective action settlement.

### A. Final Collective Action Certification

Before the court can approve the parties' FLSA collective action settlement, it must make a final certification ruling. *Barbosa*, 2015 WL 4920292, at *3 (citing *McCaffrey*, 2011 WL 32436, at *3). To determine if the putative class members are similarly situated, the court considers: "(1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 1789100, at *4 (D. Kan. May 17, 2012) (citing *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)) (other citation omitted).

*First*, the court finds that plaintiff and putative class members share similar factual and employment settings. All potential class members worked as defendant's administrative employees. Plaintiff's allegations assert that defendant required administrative employees to perform kitchen duty, but no other employees. And the alleged kitchen duty requirements were the same for all administrative employees—answer the phones and clean defendant's kitchen located in the workplace. The administrative employees within the proposed class were the only employees who defendant expected to perform kitchen duty, and kitchen duty was the only allegedly uncompensated work. So, plaintiff and the putative class members occupied similar employment settings. This conclusion favors final collective action certification.

*Second*, the types of defenses available to defendant are common to all class members. *See Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 5306273, at *2 (D. Kan. Oct. 29, 2012) (finding this factor favors final collective action certification when the "type of

defenses available to defendants appear similar among all class members"). Defendant's defenses here include ones asserting that: class members were paid for kitchen duty; defendant did not know class members were no longer recording kitchen duty on their timesheets; any unrecorded time was *de minimus*; and kitchen duty was not compensable because administrative employees could pursue personal endeavors during kitchen duty stints. This factor thus favors final collective action certification.

*Third*, final collective action certification is appropriate because it promotes "the policy encouraging settlement of litigation." *See id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). The parties contend that a class-wide settlement will eliminate any conceivable procedural issues—and will not create such issues. The court agrees. This third factor—like the other two factors—favors final collective action certification.

      **B.**    **Proposed Settlement Agreement**

When parties settle FLSA claims, they must present the settlement to the court and it must decide whether the settlement is fair and reasonable. *Tommey v. Computer Sciences Corp.*, No. 11-CV-02214-EFM, 2015 WL 1623025, at *1 (D. Kan. April 13, 2015); *see also Gambrell*, 2012 WL 5306273, at *2 (explaining that "[w]hen employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination whether the settlement is fair and reasonable" (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). To approve an FLSA settlement, the court must determine whether: (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorneys' fees. *Barbosa*, 2015 WL 4920292, at *5 (citing *McCaffrey*, 2011 WL 32436, at *2). The next three subsections discuss these requirements.

### 1. Bona Fide Dispute

To demonstrate a bona fide dispute, the parties should provide: "(1) a description of the nature of the dispute (for example, a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *McCaffrey*, 2011 WL 32436, at *4.

Trying to satisfy these requirements, the parties make the following assertions:

1. Plaintiff and class members are current and former administrative employees of defendant, an electrical contractor;

2. Plaintiff contends that defendant did not compensate her and other administrative employees for kitchen duty—*i.e.*, answering the phones over lunch and cleaning the kitchen area;

3. Plaintiff contends that none of the time that administrative employees spent performing lunch duty was compensated;

4. Defendant contends that it did pay administrative employees for kitchen duty except for one month and, even during that month, not all employees construed the December 20, 2016 email to instruct them not to record time for kitchen duty;

5. Defendant also contends that any time spent answering phones was *de minimis*, and employees were free to clean the kitchen whenever they wished throughout the paid working day;

6. The parties dispute the computation of wages owed;

7. Defendant contends that, at most, 13 hours and 20 minutes of straight time or overtime went unpaid across the entire class—capping its liability at $839.34;

8. Conversely, plaintiff contends that 510 hours of overtime was unpaid, making defendant liable for $20,808 in unliquidated and liquidated damages.

Collectively, these assertions suffice to establish a bona fide dispute. *See Gambrell*, 2012 WL 5306273, at *4 (finding a bona fide dispute when the parties asserted a dispute existed "whether all work hours were recorded and whether defendant properly compensated [class members] for overtime hours worked").

### 2. Fair and Equitable

To determine whether the proposed settlement is fair and equitable, the court considers the factors specified in Fed. R. Civ. P. 23(e). *Gambrell*, 2012 WL 5306273, at *4. The factors are: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* (citing *McCaffrey*, 2011 WL 32436, at *5); *see also Jackson v. Ash*, No. 13-2504-EFM-JPO, 2015 WL 751835, at *2 (D. Kan. Feb. 23, 2015). These factors do not exclude consideration of other appropriate circumstances. *Id.* (citing *McCaffrey*, 2011 WL 32436, at *5). The court also must consider "factors relevant to history and policy of the FLSA." *Id.* (citation omitted).

The relevant factors do not commission the court to "'conduct a foray into the wilderness in search of evidence that might undermine the conclusion that the settlement is fair.'" *Jackson*, 2015 WL 751835, at *2 (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993),

*abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002)).  "But the court also may not 'rely solely upon the assertions of the proponents of the settlement [about] what the evidence shows.'"  *Id.* (quoting *Gottlieb*, 11 F.3d at 1015).  Instead, the court must undertake "an independent analysis of 'the evidence before it' to reach its conclusion."  *Id.* (quoting *Gottlieb*, 11 F.3d at 1015).  "The proponents of the settlement bear the burden to provide sufficient evidence to enable the court to conclude that the settlement is fair."  *Id.* (citing *Gottlieb*, 11 F.3d at 1015).

*First*, the parties assert that the proposed settlement was fairly and honestly negotiated.  In *Jackson*, our court determined a proposed settlement was fair and honestly negotiated when "the agreement represented the cooperative and good faith result" of arm's-length negotiation by skilled counsel.  *Id.*  The court found:  counsel for both parties were familiar with the specific legal issues in the case; the parties had engaged in a time-consuming discovery process; the parties aggressively litigated the issue of certification; and they undertook several mediation sessions.  In sum, *Jackson* concluded, "the Agreement [was] the product, not of collusion or other impropriety, but of both parties' deliberate consideration of the action's merits and uncertainties."  *Id.*

While the parties here have provided no information about the discovery they conducted or attempts to mediate the disputes, the raw economics suggest an arm's-length negotiation has occurred.  Indeed, counsel reports that they have "exchanged several offers, damage computations, and evaluations of the merits."  Doc. 19-3 (Affidavit of Defendant's Counsel) at ¶ 10.  The court finds that the proposed settlement agreement is a product of "deliberate consideration of the action's merits and uncertainties."  *See Jackson*, 2015 WL 751835, at *2.

*Second*, serious questions of fact exist and collectively, they place the outcome of the litigation in doubt.  Specifically, while plaintiff contends that defendant failed to compensate class members for kitchen duty for about two years, defendant's records reflect that, at most, it did not compensate some of the administrative employees for kitchen duty during a one-month period.  This dispute over the number of uncompensated hours at issue places the case's outcome in doubt.

*Third*, the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.  While plaintiff contends that this lawsuit is worth about $20,808, defendant argues that its exposure cannot exceed $839.34.  And defendant's theory suggests that only five of the 10 class members could recover.  With this settlement, the class members would divide about $10,000—or half of what plaintiff believes the FLSA guarantees them.  They would receive this $10,000 without additional delay or the disruption attendant to ongoing litigation.  The proposed settlement thus "provides meaningful, immediate recovery to all class members that might otherwise be unrecoverable after a decision on the merits."  *See Jackson*, 2015 WL 751835, at *2.

*Fourth*, the parties agree that the proposed settlement is fair and reasonable.  While the court should "hesitate to substitute its own judgment for that of counsel," *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198-KHV, 2017 WL 364582, at *8 (D. Kan. Jan. 25, 2017) (citations omitted), courts nevertheless must consider whether the parties believe the settlement is fair and reasonable, *Gambrell*, 2012 WL 5306273, at *4.  Here, both parties' counsel have confirmed their judgment that the proposed settlement is fair and reasonable.  Doc. 19-2 (Affidavit of Plaintiff's Counsel) at ¶ 2; Doc. 19-3 (Affidavit of Defendant's Counsel) at ¶ 2.

In sum, the Rule 23(e) factors suggest that the proposed settlement is fair and equitable, and the history and policies of the FLSA do not counsel for a different result.

### 3. Attorneys' Fees

The FLSA requires the parties submitting a settlement agreement to include an award of reasonable attorneys' fees and the costs of the action. 29 U.S.C. § 216(b); *see also McCaffrey*, 2011 WL 32436, at *2 (citing *Lee v. The Timberland Co.*, No. C 07-2367-JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008)). The court has discretion to determine the amount and reasonableness of the fee, but the FLSA fee award nevertheless is mandatory. *Barbosa*, 2015 WL 4920292, at *4 (citations omitted).

Here, plaintiff's counsel asks for zero fees and costs. This outcome, counsel reports, will ensure plaintiff and class members receive the maximum possible recovery. A fee award of zero is within the court's discretion. *See Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244–45 (11th Cir. 2009). In that case, the Eleventh Circuit affirmed a district court decision granting no fee award to plaintiff's counsel. A spate of uncivilized conduct among counsel convinced the court that it should not award fees. *Id.*

Here, the potential for zero fee award originates in far different circumstances. Plaintiff's counsel reports that he voluntarily has elected not to seek an award. This decision does not conflict with the essential reason for fee awards under the FLSA. The purpose of a fee award is to ensure "effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances; '[o]bviously Congress intended that the wronged employee should receive his full wages . . . without incurring any expense for legal fees or costs.'" *United Slate v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)

11

(citing *Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946)) (ellipsis in original). Accordingly, the court approves counsel's request for no fee and cost award.

In sum, a bona fide dispute exists here, the settlement is fair and equitable, and the settlement agreement adequately considers the issue of attorneys' fees and costs—albeit in an unusual fashion. For these reasons, the court concludes that the proposed settlement agreement is fair and reasonable.

But as the next section explains, the court cannot preliminarily approve the agreement because the court cannot determine whether the service payment requested is fair and reasonable.

### C.     Proposed Service Payment

The court also must examine any proposed service payments to determine whether they are fair and reasonable. *See Tommey*, 2015 WL 1623025, at *2–3; *Grove*, 2012 WL 1789100, at *7 (citations omitted). The "Collective Action Settlement Agreement and Release" allows plaintiff to receive a $1,000 service payment. Doc. 19-1 at ¶ N.6. Plaintiff provides no information about the nature of her assistance to counsel during the litigation or an estimate of the number of hours she expended.

Our court evaluates the reasonableness of a requested service award by considering whether the proposed award adequately reflects the time that the designated recipient spent working on the lawsuit. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (reducing requested service awards to each of the four named plaintiffs from $15,000 to $5,000, even though the total settlement exceeded $25 million, because the $5,000 award adequately compensated each plaintiff for the 80 hours of time each one devoted, on average, to the lawsuit); *see also Barbosa*, 2015 WL 4920292, at *6 (rejecting proposed service award of $3,500 to each of two named plaintiffs who spent 24.1 hours and 9.6 hours on the case and

concluding instead that $20 per hour for the time plaintiffs spent on the case was a fair and reasonable service award); *Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *11 (D. Kan. July 14, 2009) (rejecting $10,000 proposed service award to the named plaintiff in an $8.7 million settlement because plaintiff failed to provide specific details about the amount of time she invested in the suit and awarding a $5,000 service award instead).

Plaintiff may have the wherewithal to convince the court that she deserves a $1,000 award. But so far, the court lacks any information about the time plaintiff has devoted to the case. Given that absence and the legal standard that the court must apply, the court cannot preliminarily approve the proposed settlement.

## IV. Conclusion

In sum, final collective action certification is appropriate and the proposed settlement agreement is fair and reasonable. But the court cannot determine whether the proposed service award is fair and reasonable. The court therefore cannot approve the proposed settlement agreement. The court thus denies the parties' Joint Motion for Preliminary Approval of Collective Action Settlement without prejudice to refiling a new motion that cures the deficiency of the present one.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the parties' Joint Motion for Preliminary Approval of Collective Action Settlement (Doc. 18) is denied without prejudice to refiling.

**IT IS FURTHER ORDERED THAT** the parties must notify the court **on or before June 29, 2018** of their intention either to: (1) file a revised settlement agreement and supporting

14

documentation considering the rulings in this Order; or (2) abandon settlement and proceed to litigate this dispute.

**IT IS SO ORDERED.**

**Dated this 4th day of June, 2018, at Topeka, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**